1
2
3
4
5
6
7

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE TRUJILLO, | Case No. 1:21-cv-01446-JLT-SAB |
| Plaintiff, | FINDINGS AND RECOMMENDATIONS RECOMMENDING GRANTING PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT WITH REDUCTION IN ATTORNEYS' FEES |
| v. | |
| TACO RIENDO, INC., et al., | |
| Defendants. | ORDER REQUIRING SERVICE ON DEFENDANTS WITHIN THREE DAYS |
| | (ECF No. 26) |
| | OBJECTIONS DUE WITHIN FOURTEEN DAYS |

**I.**

**INTRODUCTION**

Currently before the Court is Jose Trujillo's ("Plaintiff") motion for default judgment, filed on May 5, 2022. (ECF No. 26.)[1] Plaintiff seeks default judgment against Defendants Taco Riendo, Inc. ("Taco Riendo"), Kewal Singh Basi as Trustee of the Basi Family Revocable Trust ("Kewal"), and Olga Basi as Trustee of the Basi Family Revocable Trust ("Olga"). No opposition to the motion was filed. On June 15, 2022, the Court held a hearing on the motion for default judgment, at which no appearances were made on behalf of Defendants. Having

---

[1] All references to pagination of specific documents pertain to those as indicated on the upper right corners via the CM/ECF electronic court docketing system.

considered the moving papers, the declarations and exhibits attached thereto, the nonappearance of Defendants at the hearing, as well as the Court's file, the Court issues the following findings and recommendations recommending granting Plaintiff's motion for default judgment, subject to a reduction in the requested attorneys' fees.

## II.

## BACKGROUND

### A.      Procedural History

On September 28, 2021, Plaintiff filed this action against current Defendant Taco Riendo, and now terminated Defendant Richard W. Anderson, Jr ("Anderson").  (ECF No. 1.)   On December 6, 2021, an executed summons was filed proffering Defendant Taco Riendo was served on November 1, 2021.  (ECF No. 7.)  Default was entered against Taco Riendo on December 13, 2021.  (ECF No. 9.)

On December 20, 2021, Plaintiff filed a first amended complaint ("FAC"), the operative complaint in this action.  (ECF No. 11.)  The FAC names Taco Riendo, as well as current Defendants Kewal and Olga.  On January 24, 2022, executed summonses were filed proffering Defendants Olga and Kewal were served on January 18, 2022.  (ECF Nos. 17, 18.)  Default was entered against Defendants Olga and Kewal, and again against Defendant Taco Riendo, on February 22, 2022.  (ECF Nos. 22, 23, 24.)

On May 5, 2022, Plaintiff filed the motion for default judgment that is currently before the Court.  (ECF No. 26.)  No Defendants have filed an opposition to the motion nor otherwise appeared in this action.  The deadline to file an opposition has expired.  See L.R. 230(c).

On June 15, 2022, the Court held a hearing via videoconference, with the courtroom open to the public.  Counsel Tanya E. Moore appeared via video on behalf of Plaintiff.  Nobody appeared on behalf of Defendants via videoconference, the public access telephone line, nor in person, despite the courtroom being open to the public.

### B.      Plaintiff's Allegations in the Operative Complaint

Plaintiff brings this action against Defendants alleging violation of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12181, *et seq.*, as amended by the ADA Amendments Act

of 2008 (P.L. 110-325) (the "ADA"); California's Unruh Civil Rights Act, California Civil Code § 51, *et seq.* (the "Unruh Act"); and California Health and Safety Code § 19953.  (FAC, ECF No. 11; Pl.'s Mem. P. & A. Supp. Mot. Default J. ("Mem.") at 5, ECF No. 26-1.)  Plaintiff alleges that he is substantially limited in his ability to walk, uses a wheelchair or cane for mobility, and has substantially limited hearing.  (FAC ¶ 8; Mem. 5.)  As a result, Plaintiff claims he is physically disabled as defined by all applicable California and United States laws, and is a member of the public whose rights are protected by such laws.  (Id.)

Plaintiff alleges that Defendants "own, operate, and/or lease" Taco Riendo, located at 235 West Inyo Avenue, Tulare, California (the "Facility").  (FAC ¶ 7; Mem. 5.)  The Facility is open to the public, intended for non-residential use, its operation affects commerce, and thus Plaintiff alleges the Facility is a public accommodation as defined by the applicable laws.  (Compl. ¶ 9.)  Plaintiff lives less than fifteen miles from the Facility, and visited the Facility on July 26, 2021, to have dinner.  (FAC ¶ 10.)  During his visit to the Facility, Plaintiff encountered several barriers (both physical and intangible) that interfered with, if not outright denied, Plaintiff's ability to use and enjoy the goods, services, privileges, and accommodations offered at the Facility.  (Id.)

First, Plaintiff claims he could not find any designated accessible parking stalls in the Facility's parking lot, and had to park in a standard parking stall that lacked an access aisle.  (Id.)  Second, Plaintiff claims the path of travel from the parking area to the Facility entrance was uneven, with excessive slopes and height changes, and lacked sufficient clear width, making it difficult for Plaintiff to maneuver.  (Id.)  Third, Plaintiff claims the Facility entrance door was heavy and difficult for Plaintiff to open, and there was an excessive slope at the exterior landing which compounded the difficulty.  (Id.)  Fourth, Plaintiff claims the threshold at the Facility entrance was too high, and there was an uneven transition from the cement to the interior of the floor, which made it difficult for Plaintiff to wheel through the doorway.  (Id.)  Fifth, Plaintiff could not find any accessible tables at the Facility, had to sit at a table which was too low that lacked sufficient knee clearance, and required him to sit at an awkward angle and distance from the table while eating, which was difficult and uncomfortable.  (Id.)  Finally, Plaintiff claims the

1 | transaction counter was too high making it difficult to pay for his meal; that he could not see the

2 | prompts for the point-of-sale device because it was too high; that he had to flip the device on its

3 | side to be able to see the prompts, which was embarrassing; and although employees saw him

4 | struggling, they did not offer any assistance nor did they help him carry his food to the table.

5 | (Id.)

6 |       Plaintiff claims he was, and continues to be deterred from visiting the facility because he

7 | knows the goods, services, facilities, privileges, advantages, and accommodations were and are

8 | unavailable to Plaintiff due to his physical disabilities.  (FAC ¶ 12.)  Plaintiff also claims that he

9 | enjoys the goods and services offered, and will return once the barriers are removed.  (Id.)

10 | **C.**    **Relief Sought**

11 |       Plaintiff pleads for the following relief : (1) injunctive relief, preventive relief, or other

12 | proper relief; (2) statutory minimum damages under the Unruh Act; (3) attorneys' fees, expenses,

13 | and costs; (4) interest; and (5) other proper relief as deemed by the Court.  (FAC at p. 9.)  In

14 | moving for default judgment, Plaintiff specifically seeks: (1) judgment against Defendants on all

15 | claims, with an injunction requiring Defendants to remove the architectural barriers encountered;

16 | (2) statutory damages in the amount of $4,000; and (3) attorneys' fees and costs in the amount of

17 | $4,334.33, plus any additional fees incurred as a result of counsel's appearance at the hearing on

18 | this matter.  (ECF No. 26 at 2-3; Mem. 10-13.)

19 | **III.**

20 | **LEGAL STANDARD FOR DEFAULT JUDGMENT**

21 |       "Our starting point is the general rule that default judgments are ordinarily disfavored," as

22 | "[c]ases should be decided upon their merits whenever reasonably possible."  NewGen, LLC v.

23 | Safe Cig, LLC, 840 F.3d 606, 616 (9th Cir. 2016) (quoting Eitel v. McCool, 782 F.2d 1470, 1472

24 | (9th Cir. 1986)).  Pursuant to Federal Rules of Civil Procedure 55, obtaining a default judgment is

25 | a two-step process.  Entry of default is appropriate as to any party against whom a judgment for

26 | affirmative relief is sought that has failed to plead or otherwise defend as provided by the Federal

27 | Rules of Civil Procedure and where that fact is made to appear by affidavit or otherwise.  Fed. R.

28 | Civ. P. 55(a).  After entry of default, a plaintiff can seek entry of default judgment.  Fed. R. Civ. P.

55(b).  Federal Rule of Civil Procedure 55(b)(2) provides the framework for the Court to enter a

default judgment:

> (b) Entering a Default Judgment.
>
>> (2) By the Court. In all other cases, the party must apply to the court for a default judgment. A default judgment may be entered against a minor or incompetent person only if represented by a general guardian, conservator, or other like fiduciary who has appeared. If the party against whom a default judgment is sought has appeared personally or by a representative, that party or its representative must be served with written notice of the application at least 7 days before the hearing. The court may conduct hearings or make referrals--preserving any federal statutory right to a jury trial--when, to enter or effectuate judgment, it needs to:
>>
>>> (A) conduct an accounting;
>>>
>>> (B) determine the amount of damages;
>>>
>>> (C) establish the truth of any allegation by evidence; or
>>>
>>> (D) investigate any other matter.

Fed. R. Civ. P. 55.

The decision to grant a motion for entry of default judgment is within the discretion of the

court.  PepsiCo, Inc. v. California Security Cans, 238 F.Supp. 1172, 1174 (C.D. Cal. 2002).  The

Ninth Circuit has set forth the following seven factors (the "Eitel factors") that the Court may

consider in exercising its discretion:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

Eitel, 782 F.2d at 1471-72.

Generally, once default has been entered, "the factual allegations of the complaint, except

those relating to damages, will be taken as true."  Garamendi v. Henin, 683 F.3d 1069, 1080 (9th

Cir. 2012) (quoting Geddes v. United Fin. Grp., 559 F.2d 557, 560 (9th Cir. 1977)); see also Fed.

R. Civ. P. 8(b)(6) ("An allegation--other than one relating to the amount of damages--is admitted if

a responsive pleading is required and the allegation is not denied.").  Accordingly, the amount of

damages must be proven at an evidentiary hearing or through other means.  Microsoft Corp. v.

Nop, 549 F.Supp.2d 1233, 1236 (E.D. Cal. 2008).  Additionally, "necessary facts not contained in the pleadings, and claims which are legally insufficient, are not established by default."  Cripps v. Life Ins. Co. of North America, 980 F.2d 1261, 1267 (9th Cir. 1992) (internal citation omitted). The relief sought must not be different in kind or exceed the amount that is demanded in the pleadings.  Fed. R. Civ. P. 54(c).

**IV.**

**DISCUSSION**

The Court first determines whether the Court properly has jurisdiction in this matter, and then turns to the Eitel factors to determine whether default judgment should be entered.

**A.**   **Jurisdiction**

1.   Subject Matter Jurisdiction

Federal courts are courts of limited jurisdiction and their power to adjudicate is limited to that granted by Congress.  U.S v. Sumner, 226 F.3d 1005, 1009 (9th Cir. 2000).  Pursuant to 28 U.S.C. § 1331, federal courts have original jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States.'  "A case 'arises under' federal law either where federal law creates the cause of action or where the vindication of a right under state law necessarily turns on some construction of federal law."  Republican Party of Guam v. Gutierrez, 277 F.3d 1086, 1088 (9th Cir. 2002) (internal punctuation omitted) (quoting Franchise Tax Bd. v. Construction Laborers Vacation Trust, 463 U.S. 1, 8–9 (1983) (citations omitted)).  "[T]he presence or absence of federal-question jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint."  Republican Party of Guam, 277 F.3d at 1089 (citations omitted).

Plaintiff brings this action alleging violations of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, et seq.  Therefore, the Court has original jurisdiction under 28 U.S.C. § 1331.  In addition, the Court may appropriately exercise supplemental jurisdiction under 28 U.S.C. § 1367 for Plaintiff's related state law claims.

/ / /

2.    The Court finds Service of Process on Defendants to be Adequate

The proof of service for Taco Riendo proffers that on October 21, 2021, at 12:34 p.m., the summons was served on Taco Riendo's then registered agent for service of process,[2] Noe Sandez, at 548 S. Lovers Lane, Visalia, California, 93292, by serving "Enrique Doe (Refused Last Name), Apparently In Charge," and subsequently mailing the documents to the same address. (ECF No. 7 at 2-3.) The proofs of service of summonses on Kewal and Olga proffer substitute service was completed on January 4, 2022, at 9:16 a.m., on the same "Jane Doe (refused name), Co-Occupant," at 3224 Burl Ave., Clovis, California 93611, and subsequently mailed to the same address. (ECF Nos. 17 at 2-5, 18 at 2-5.) The forms proffer that before the substitute service was completed, there was no answer at this address on December 29, 2021, and on January 1, 2022. (Id. at 3.) The form provides a description of the person served, including age, sex, race, height, weight, and lack of glasses. (Id.) The Court notes that the captions of the process server's forms for Olga and Kewal, contain the name of Defendant Taco Riendo, and former Defendant Richard Anderson, and the new Defendants were not added to these caption pages. Nonetheless, that only corresponds to the proof of service form, and the form attests that the first amended complaint and the summonses as issued by the Court were served on the parties. (Id. at 2.)

As a general rule, the Court considers the adequacy of service of process before evaluating the merits of a motion for default judgment. See J & J Sports Prods., Inc. v. Singh, No. 1:13-CV-1453-LJO-BAM, 2014 WL 1665014, at *2 (E.D. Cal. Apr. 23, 2014); Penpower Tech. Ltd. v. S.P.C. Tech., 627 F. Supp. 2d 1083, 1088 (N.D. Cal. 2008); Mason v. Genisco

---

[2]  While Taco Riendo subsequently changed their registered agent for service of process on March 10, 2022, the Court takes judicial notice and confirms that Noe Sandez, at 548 S Lovers Lane, Visalia , California 93292, was the then agent for service of process on the date of service, October 21, 2021, as registered with the California Secretary of State.  Courts may take judicial notice of "a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b).  Courts may take judicial notice of information displayed on government websites where neither party disputes the accuracy of the information contained therein.  Daniels –Hall v. National Educ. Ass'n, 629 F.3d 992, 998-99 (9th Cir. 2010).  Specifically, Courts routinely take judicial notice of information contained in the California Secretary of State's website.  See No Cost Conf., Inc. v. Windstream Commc'ns, Inc., 940 F. Supp. 2d 1285, 1296 (S.D. Cal. 2013); Gerritsen v. Warner Bros. Ent. Inc., 112 F. Supp. 3d 1011, 1034 (C.D. Cal. 2015); L'Garde, Inc. v. Raytheon Space & Airborne Sys., 805 F. Supp. 2d 932, 937 (C.D. Cal. 2011).

1  Tech. Corp., 960 F.2d 849, 851 (9th Cir. 1992) (stating that if party "failed to serve [defendant]

2  in the earlier action, the default judgment is void and has no res judicata effect in this action.").

3         "Rule 4 is a flexible rule that should be liberally construed so long as a party receives

4  sufficient notice of the complaint."   Direct Mail, 840 F.2d at 688 (quoting United Food &

5  Commercial Workers Union v. Alpha Beta Co., 736 F.2d 1371, 1382 (9th Cir. 1984)).   However,

6  "without substantial compliance with Rule 4, 'neither actual notice nor simply naming the

7  defendant in the complaint will provide personal jurisdiction.' "   Direct Mail, 840 F.2d at 688

8  (quoting Benny v. Pipes, 799 F.2d 489, 492 (9th Cir.1986)).   "[A] signed return of service

9  constitutes prima facie evidence of valid service which can be overcome only by strong and

10  convincing evidence."   SEC v. Internet Solutions for Bus., Inc., 509 F.3d 1161, 1163 (9th Cir.

11  2007).

12         Federal Rule of Civil Procedure 4(e) governs service on individuals within a judicial

13  district of the United States and provides that a plaintiff may serve an individual by:

14
15      (1) following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made; or

16      (2) doing any of the following:

17
18          (A) delivering a copy of the summons and of the complaint to the individual personally;

19          (B) leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or

20
21          (C) delivering a copy of each to an agent authorized by appointment or by law to receive service of process.

22  Fed. R. Civ. P. 4(e).

23         California law allows for service upon an individual by personal delivery to the person to

24  be served.   Cal. Civ. Proc. Code § 415.10.   California allows for substitute service upon an

25  individual:

26      If a copy of the summons and complaint cannot with reasonable diligence be personally delivered to the person to be served . . . a summons may be served by leaving a copy of the summons and complaint at the person's dwelling house, usual place of abode, usual place of business, or usual mailing address other than a United States Postal Service post office box, in the presence of a competent member of the household or a person apparently in charge of his or her office,

27

28

place of business, or usual mailing address other than a United States Postal Service post office box, at least 18 years of age, who shall be informed of the contents thereof, and by thereafter mailing a copy of the summons and of the complaint by first-class mail, postage prepaid to the person to be served at the place where a copy of the summons and complaint were left.

Cal. Civ. Proc. Code § 415.20(b).

A corporation, partnership, or association may be served "by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process." Fed. R. Civ. P. 4(h)(1)(B). Service on a corporation, partnership, or association may also "be made . . . pursuant to a method under state law in the state where the district court is located, or where service is made." Fed. R. Civ. P. 4(h). In California, a corporation may be served by delivery to the person designated as an agent for service of process, or to the "president, chief executive officer, or other head of the corporation, a vice president, a secretary or assistant secretary, a treasurer or assistant treasurer, a controller or chief financial officer, a general manager, or a person authorized by the corporation to receive service of process." Cal. Civ. Proc. Code § 416.10(a)-(b). In California, substitute service on the person to be served to effectuate service on a corporation may be made: "by leaving a copy of the summons and complaint during usual office hours in his or her office or, if no physical address is known, at his or her usual mailing address, other than a United States Postal Service post office box, with the person who is apparently in charge thereof, and by thereafter mailing a copy of the summons and complaint by first-class mail, postage prepaid to the person to be served at the place where a copy of the summons and complaint were left." Cal. Civ. Proc. Code § 415.20(a).

This Court has previously examined and recommended finding service inadequate in a motion for default judgment filed by this Plaintiff, where service was proffered to have been effectuated on insufficiently described "doe" individuals, at an address different from that of the registered agent for service of process. See Jose Trujillo v. Harsarb, Inc., et al., No. 121CV00342NONESAB, 2021 WL 3783388, at *6-7 (E.D. Cal. Aug. 26, 2021), report and recommendation adopted in part sub nom. Trujillo v. Harsarb, Inc., No. 121CV00342NONESAB, 2021 WL 4804249 (E.D. Cal. Oct. 14, 2021). While here too there

1  was substitute service completed on "doe" individuals, the Court finds Plaintiff has sufficiently

2  demonstrated service on the three currently named Defendants.  See J & J Sports Prods., Inc. v.

3  Barksdale, No. CIV S-11-2994 JAM, 2012 WL 1353903, at *5 (E.D. Cal. Apr. 13, 2012) ("The

4  mere fact that the service documents were left with an unidentified adult is not fatal to the

5  service, because courts have recognized that persons in apparent charge of businesses often

6  refuse to provide their names for purposes of service, and that it is an accepted practice to name

7  such a person by a fictitious name or by description [and] [f]urthermore, the substituted service

8  statute also has an additional safeguard built into the process by requiring follow-up service by

9  mail."), report and recommendation adopted, No. 2:11-CV-2994 JAM CKD, 2012 WL 2376284

10  (E.D. Cal. June 22, 2012).

11        Plaintiff has provided additional support as to the completion of service here, including

12  communications with an officer of Taco Riendo, and supporting research as to the address for

13  Kewal and Olga.  (Decl. Tanya E. Moore Supp. Mot. Default J. ("Moore Decl.") ¶¶ 15-19, ECF

14  No. 26-2.)  The Court finds the proofs of service here to be sufficient.  See Internet Solutions for

15  Bus., 509 F.3d at 1163 ("[A] signed return of service constitutes prima facie evidence of valid

16  service which can be overcome only by strong and convincing evidence."); Tim Pao v. Liphan

17  Lee, No. CV136421DSFAJWX, 2013 WL 12203046, at *2 (C.D. Cal. Oct. 21, 2013) ("[T]he

18  process server's affidavit adequately describes John Doe as a person 'apparently in charge[,]'

19  [and] [t]he Pico Boulevard address is the registered entity address for Pao, Inc."); Dist. Council

20  16 N. CA Health & Welfare Tr. Fund v. Advanced Concrete Techs., Inc., No. C 08-04430

21  WHA, 2009 WL 1125874, at *1 (N.D. Cal. Apr. 27, 2009) ("The proof of service indicates that

22  'substituted service' was executed on a John Doe 'apparently in charge at the place of business,'

23  and that the summons, complaint and other documents were also sent by first-class mail[,]

24  [s]ervice was executed on a California address on file with the California Secretary of State for

25  defendant (as well as an address of former-defendant Raines) [and] counsel for plaintiffs served

26  the request for entry of default on three California addresses for defendant.").

27  / / /

28  / / /

**B.      The Eitel Factors Weigh in Favor of Granting Default Judgment**

The Court finds that consideration of the Eitel factors weighs in favor of granting default judgment in favor of Plaintiff.

1.      Prejudice to Plaintiff if Default Judgment is Not Granted

Plaintiff filed this action on September 28, 2021, and filed the first amended complaint on December 20, 2021.  (ECF Nos. 1, 11.)  Defendants were alleged to have been served on November 1, 2021, and January 24, 2022.  (ECF Nos. 7, 17, 18.)  If default judgment is not entered, Plaintiff, a disabled individual, is effectively denied a remedy for the violations of the disability statutes as alleged, until such time as the Defendants in this action decide to appear in the litigation, which may never occur.  Defendants have not filed an answer, a motion to dismiss, or otherwise appeared in the action; Defendants failed to file any opposition to the instant motion for default judgment; and failed to make an appearance at the June 15, 2022 hearing held on the instant motion.  (ECF No. 13.)

For these reasons, the Court finds Plaintiff would be substantially prejudiced if default judgment is not granted and finds this Eitel factor weighs in favor of granting default judgment in favor of Plaintiff.  See, e.g., Vogel v. Rite Aid Corp., 992 F. Supp. 2d 998, 1007 (C.D. Cal. 2014).

2.      The Merits of Plaintiff's Substantive Claims and Sufficiency of Complaint

The second and third Eitel factors instruct the Court to evaluate the merits of the substantive claims alleged in the complaint as well as the sufficiency of the complaint itself.  It is appropriate for the Court to analyze these two factors together.  AMUR Equip. Fin., Inc. v. CHD Transp. Inc., No. 117CV00416AWISKO, 2017 WL 5477379, at *5 (E.D. Cal. Nov. 15, 2017); F.D.I.C. v. Quest, F.S., Inc., No. SACV 10-00710 DOC, 2011 WL 2560428, at *2 (C.D. Cal. June 27, 2011).  In doing so, the Court looks to the complaint to determine if the allegations contained within are sufficient to state a claim for the relief sought.  Danning v. Lavine, 572 F.2d 1386, 1388 (9th Cir. 1978).

a.      **Americans with Disabilities Act**

One of the purposes of the ADA is "to provide clear, strong, consistent, enforceable

standards addressing discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(2). "Congress enacted the statute on the premise that discrimination against the disabled is 'most often the product, not of invidious animus, but rather the thoughtlessness and indifference—of benign neglect.' " Cohen v. City of Culver City, 754 F.3d 690, 694 (9th Cir. 2014) (quoting Alexander v. Choate, 469 U.S. 287, 295 (1985)). "Therefore, the ADA proscribes not only 'obviously exclusionary conduct,' but also 'more subtle forms of discrimination—such as difficult-to-navigate restrooms and hard-to-open doors—that interfere with disabled individuals' full and equal enjoyment' of public places and accommodations." Cohen, 754 F.3d at 694 (quoting Chapman v. Pier 1 Imps. (U.S.) Inc., 631 F.3d 939, 945 (9th Cir.2011)). "An ADA plaintiff suffers a legally cognizable injury under the ADA if he is 'discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, [or] facilities . . . of any place of public accommodation.' " Chapman, 631 F.3d at 952 (quoting 42 U.S.C. § 12182(a)) (alteration in original).

"To prevail on a Title III discrimination claim, the plaintiff must show that (1) she is disabled within the meaning of the ADA; (2) the defendant is a private entity that owns, leases, or operates a place of public accommodation; and (3) the plaintiff was denied public accommodations by the defendant because of her disability." Molski v. M.J. Cable, Inc., 481 F.3d 724, 730 (9th Cir. 2007) (citing 42 U.S.C. §§ 12182(a)-(b)). Discrimination under the ADA is defined to include "a failure to remove architectural barriers, . . . in existing facilities, . . . where such removal is readily achievable." 42 U.S.C. § 12182(b)(2)(A)(iv). To state a claim for discrimination under the ADA because of denial of public accommodations due to "the presence of architectural barriers in an existing facility, a plaintiff must allege and prove that: '(1) the existing facility at the defendant's place of business presents an architectural barrier prohibited under the ADA, and (2) the removal of the barrier is readily achievable.' " Hubbard v. 7-Eleven, Inc., 433 F. Supp. 2d 1134, 1138 (S.D. Cal. 2006) (quoting Parr v. L & L Drive-Inn Rest., 96 F. Supp. 2d 1065, 1085 (D. Haw. 2000)); see also Wyatt v. Ralphs Grocery Co., 65 F. App'x 589, 590 (9th Cir. 2003).

      i.     Plaintiff has Established he is Disabled under the ADA

Plaintiff must allege that he is disabled under the ADA. Molski, 481 F.3d at 730. The

ADA defines disability as "a physical or mental impairment that substantially limits one or more major life activities." 42 U.S.C. § 12102(1)(A). Major life activities include walking, standing, and hearing. 42 U.S.C. § 12102(2)(A). Plaintiff alleges that he is substantially limited in his ability to walk, uses a wheelchair or cane for mobility, and is also has substantially limited hearing. (FAC ¶ 8.) The Court notes that plaintiffs often submit a declaration attesting to their disability and interactions with the defendant's facility with the motion for default judgment. No such declaration was provided here, however, the Court takes the allegations contained in the complaint as true for purposes of default judgment, and the complaint is verified. (See ECF No. 11 at 10.)

Taking the allegations in the complaint as true for purposes of default judgment, Plaintiff has adequately established this element of his ADA discrimination claim.

ii.   Plaintiff has Established Defendants Own, Operate, or Lease a Public Accommodation

Plaintiff must allege that the Defendant "owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a); Molski, 481 F.3d at 730. Plaintiff proffers the Facility is a restaurant open to the public, intended for non-residential use and operation affects commerce, and is a place of public accommodation under the ADA. (FAC ¶ 10; Mem. 9.)

The ADA provides that a "restaurant" is considered a public accommodation. 42 U.S.C. § 12181(7)(B). Plaintiff alleges he visited the Facility to purchase dinner on July 26, 2021. (FAC ¶ 10.) Plaintiff's complaint generally states, "Defendants own, operate, and/or lease the Facility, and consist of a person (or persons), firm, and/or corporation." (FAC ¶ 7.) The motion states that the Defendants "own and operate the Facility." (Mem. 5.) The declaration attached to the motion provides additional support for these contentions. Specifically, counsel attached a copy of a trust transfer deed for the Facility, which counsel proffers reflects that Defendants Kewal and Olga, as Trustees of the Basi Family Revocable Living Trust, owns the real property on which the Facility is located. (Moore Decl. ¶ 15.) Counsel also affirms that Defendant Taco Riendo, Inc., operates the subject Facility by reviewing the information obtained from the Lexis Nexis public records database. (Moore Decl. ¶ 16.)

Taking the allegations as true for purposes of default judgment, and in consideration of the

1 supporting declaration of counsel, the Court finds Plaintiff has sufficiently alleged that the

2 Defendants own or operates a place of public accommodation.

3         iii.     Plaintiff was Denied Public Accommodations due to an Architectural Barrier

4         Plaintiff must allege and prove that he was denied public accommodations by a defendant

5 because of his disability. Molski, 481 F.3d at 730. Here, Plaintiff may establish such denial by

6 demonstrating the facility presents an architectural barrier prohibited under the ADA, and the

7 removal of the barrier is readily achievable. Hubbard, 433 F. Supp. 2d at 1138.

8         1)     Architectural Barrier

9         Congress entrusted the Attorney General with promulgating the implementing regulations

10 for Title III. Fortyune v. Am. Multi-Cinema, Inc., 364 F.3d 1075, 1080 (9th Cir. 2004) (citing 42

11 U.S.C. § 12186(b)). Congress provided that these implementing regulations must be consistent

12 with the minimum guidelines issued by the Architectural and Transportation Barriers Compliance

13 Board, which issued its final ADA Accessibility Guidelines for Buildings and Facilities

14 ("ADAAG") in 1991. Id. (citing 42 U.S.C. § 12186(c); 36 C.F.R. Pt. 1191, App. A). The

15 Attorney General adopted the ADAAG as the "Standards for Accessible Design," and they lay out

16 the technical structural requirements of places of public accommodation and are applicable during

17 the design, construction, and alteration of such facilities. Id. (citing 28 C.F.R. Pt. 36, App. A).

18 "Whether a facility is 'readily accessible' is defined, in part, by the ADA Accessibility

19 Guidelines." Chapman, 631 F.3d at 945.

20         Plaintiff proffers that because no discovery has occurred, Plaintiff does not know if the

21 Facility was constructed or had any alteration done after March 15, 2012, and therefore will apply

22 the 1991 ADAAG standards to determine whether a barrier existed at the time of his visit to the

23 Facility. (Mem. 7.) Plaintiff submits that the 2010 Standards now in effect will govern any

24 injunction which issues though, since the remedial work will be undertaken after March 15, 2012.

25 (Mem. 7.)

26         Plaintiff claims he could not find any designated accessible parking stalls in the Facility's

27 parking lot and had to park in a standard parking stall that lacked an access aisle. (FAC ¶ 10(a).)

28 Plaintiff argues Defendants failed to provide accessible parking at the Facility in violation of 1991

1   ADAAG § 4.1.2(5), as well as the 2010 Standards §§ 502, *et seq*.  (Mem. 8.)

2       Plaintiff claims the path of travel from the parking area to the Facility entrance was uneven,

3   with excessive slopes and height changes, and lacked sufficient clear width, making it difficult for

4   Plaintiff to maneuver.  (FAC ¶ 10(b).)  Plaintiff argues Defendants failed to provide an accessible

5   route of travel between the designated accessible parking stall and Facility entrance in violation of

6   1991 ADAAG § 4.1.2(1), as well as the 2010 Standards §§ 403, *et seq.*  (Mem. 8-9.)

7       Plaintiff claims the entrance door was heavy and difficult for Plaintiff to open, that there

8   was an excessive slope at the exterior landing which compounded the difficulty, and that the

9   threshold at the Facility entrance was too high with an uneven transition from the cement to the

10   interior of the floor.  (FAC ¶ 10(c)-(d).)  Plaintiff argues Defendants failed to provide an accessible

11   entrance as required by 1991 ADAAG § 4.1.3(7)(a), as well as the 2010 Standards §§ 404, *et seq.*

12   (Mem. 9.)

13       Plaintiff claims that he could not find any accessible tables, had to sit at a table which was

14   too low that lacked sufficient knee clearances for his wheelchair, and was required to sit at an

15   awkward angle and distance from the table while eating.  (FAC ¶ 10(e).)  Plaintiff argues

16   Defendants failed to provide an accessible dining surface as required by 1991 ADAAG § 5.1, as

17   well as the 2010 Standards §§ 226, *et seq.*  (Mem. 9.)

18       Plaintiff claims that transaction counter was too high, making it difficult for Plaintiff to pay

19   for his meal; that he could not see the prompts on the point-of-sale device because it was too high

20   and had to flip the device on its side to be able to see the prompts, which was embarrassing; and no

21   employees helped to assist despite him struggling.  (FAC ¶ 10(f).)  Plaintiff argues Defendants

22   failed to provide an accessible service counter as required by 1991 ADAAG § 7.2(1), as well as the

23   2010 Standards § 904.4.  (Mem. 10.)

24       The Court notes that even on default judgment in ADA cases, plaintiffs often present the

25   results of an investigation by an independent consultant, such as a construction expert that takes

26   measurements, or at least a more detailed declaration of the plaintiff in support of the claim that

27   there is an architectural barrier.  Here, counsel, as part of requesting an award of costs, does proffer

28   that prior to filing this action, she hired a consultant with knowledge of state and federal

accessibility standards to visit the Facility and document the existence of the conditions Plaintiff complained about, and report such information back to counsel.  (Moore Decl. ¶ 14.)  This report is not provided in support of the motion for default judgment.

Taking the allegations as true for purposes of default judgment as presented by Plaintiff in his complaint, and based on the applicable laws and regulations, the Court finds Plaintiff has sufficiently alleged and demonstrated the presence of architectural barriers present at the Facility which violate the ADA.

2)   Whether Removal of the Architectural Barrier is Readily Achievable

Removal of an architectural barrier is "readily achievable" if it is "easily accomplishable and able to be carried out without much difficulty or expense."  42 U.S.C § 12181(9).  Factors to be considered in determining whether such removal is readily achievable include: "(A) the nature and cost of the action needed under this chapter; (B) the overall financial resources of the facility or facilities involved in the action; the number of persons employed at such facility; the effect on expenses and resources, or the impact otherwise of such action upon the operation of the facility; (C) the overall financial resources of the covered entity; the overall size of the business of a covered entity with respect to the number of its employees; the number, type, and location of its facilities; and (D) the type of operation or operations of the covered entity, including the composition, structure, and functions of the workforce of such entity; the geographic separateness, administrative or fiscal relationship of the facility or facilities in question to the covered entity."  Id.  Federal regulations provide examples of readily achievable steps to remove barriers including: installing ramps, making curb cuts in sidewalks and entrances, widening doors, eliminating a turnstile or providing an alternative accessible path, and creating designated accessible parking spaces, among other examples.  28 C.F.R. § 36.304(b).

Before the Ninth Circuit addressed whether the plaintiff or defendant carries the burden of proving that removal of an architectural barrier is readily achievable, the majority of district courts in the circuit applied the Tenth Circuit's burden-shifting framework developed in Colorado Cross Disability Coal. v. Hermanson Family Ltd. P'ship I, 264 F.3d 999 (10th Cir. 2001).  See Moore v. Robinson Oil Corp., 588 F. App'x 528, 530 (9th Cir. 2014).  At the default judgment stage, district

1    courts routinely found defaulting defendants had failed to plead the affirmative defense that

2    removal of the barrier is not readily achievable, and thus considered the defense waived for

3    purposes of default judgment.  See Moore, 588 F. App'x at 530; Vogel, 992 F. Supp. 2d at 1010;

4    Ngoc Lam Che v. Boatman-Jacklin, Inc., No. 18-CV-02060-NC, 2019 WL 3767451, at *2 (N.D.

5    Cal. Aug. 9, 2019).

6          In Lopez, the Ninth Circuit adopted a somewhat more lenient standard from the Second

7    Circuit, for courts to apply at the summary judgment stage.  Lopez v. Catalina Channel Express,

8    Inc., 974 F.3d 1030, 1038 (9th Cir. 2020) ("Although every circuit applies a burden-shifting

9    framework when addressing claims for removal of architectural barriers at summary judgment . . .

10   the Tenth Circuit requires plaintiffs to provide precise cost estimates and a specific design

11   regarding their proposed accommodation . . . whereas the Second Circuit requires plaintiffs only to

12   articulate a plausible proposal for barrier removal, the costs of which, facially, do not clearly

13   exceed its benefits, . . . We believe that the Second Circuit's approach is most sensible because

14   otherwise we would be asking too much of plaintiffs . . . we hold that to satisfy their initial burden,

15   ADA plaintiffs must plausibly show how the cost of removing the architectural barrier at issue

16   does not exceed the benefits under the circumstances.") (citing Roberts v. Royal Atl. Corp., 542

17   F.3d 363, 373 (2d Cir. 2008) (other citations and internal quotation marks omitted).  Plaintiff cites

18   Lopez in the moving papers, simply proffering that he "is required to plausibly explain why

19   removal of the barrier is readily achievable."  (Mem. 8.)  Plaintiff does not address the burden

20   shifting framework nor its manner of applicability as to the motion for default judgment context

21   versus the summary judgment context.

22         Magistrate Judge Kendall J. Newman recently issued findings and recommendations that

23   thoroughly discussed the Lopez burden shifting in the context of a motion for default judgment.

24   Whitaker v. Sheikh, No. 221CV0493KJMKJNPS, 2022 WL 1262023, at *3 (E.D. Cal. Apr. 28,

25   2022) ("Because Lopez was an appeal from summary judgment for the defendant, the Ninth

26   Circuit had no occasion to address the pleading requirements for plaintiff to state a claim of

27   barrier-related discrimination.").  The Court will not reproduce the extensive discussion here,

28   however, the Court finds Judge Newman's analysis to be thorough, persuasive, and the Court

1  adopts the reasoning here.  In short, Judge Newman concluded as follows:

> Therefore, despite the conclusory nature of plaintiff's allegations, the undersigned finds them sufficient to plausibly plead that it would be readily achievable to lower a portion of the sales counter or add an adjacent lower counter.
>
> That is all a plaintiff must do at the pleadings stage. The undersigned departs from the predominating practice among district courts—including those just cited—of finding on default judgment motions that a complaint does or does not satisfy the plaintiff's "initial burden" under Lopez (or Colorado Cross, pre-Lopez). As discussed at length above, the burden-shifting framework does not apply until the court is evaluating evidence. All the plaintiff must do at the pleadings stage to proceed under § 12182(b)(2)(A)(iv) is plausibly allege that the barrier's removal is readily achievable. Doing so does not "shift the burden" to the defendant, except insofar as it apprises the defendant of the need to plead the applicable affirmative defense to the contrary. If the defendant fails to so plead, the plaintiff is effectively entitled to judgment on the pleadings as to that claim—assuming he pleads the preceding elements of a qualifying disability, a covered public accommodation, and an architectural barrier encountered.

Whitaker v. Sheikh, 2022 WL 1262023, at *7.  Thus, Judge Newman declined to apply the burden-shifting analysis at the motion for default judgment stage.

Here, Plaintiff generally alleges that "Defendants can easily remove the architectural barriers at the Facility without much difficulty or expense, that the cost of removing the architectural barriers does not exceed the benefits under the particular circumstances, and that Defendants violated the ADA by failing to remove those barriers, when it was readily achievable to do so."  (FAC ¶ 21.)  Plaintiff also alleges that "[i]n the alternative, if it was not 'readily achievable' for Defendants to remove the Facility's barriers, then Defendants violated the ADA by failing to make the required services available through alternative methods, which are readily achievable."  (FAC ¶ 22.)  While the complaint only presents these *generic* allegations, Plaintiff's moving papers additionally present arguments as to each of the alleged barriers, including caselaw demonstrating that some of the potential changes, such as creating an accessible parking space, are routinely found to be readily achievable.  See, e.g., Johnson v. Altamira Corp., No. 16-CV-05335 NC, 2017 WL 1383469, at *3 (N.D. Cal. Mar. 27, 2017) ("Under 28 C.F.R. § 36.304(b), examples of readily achievable steps to remove barriers include . . .  creating designated accessible parking spaces."), report and recommendation adopted, No. 16-CV-05335-LHK, 2017 WL 1365250 (N.D.

1   Cal. Apr. 14, 2017).

2       The Court finds that Plaintiff has plausibly alleged that the barriers' removal is readily

3   achievable.  42 U.S.C. § 12182(b)(2)(A)(iv); Whitaker v. Sheikh, 2022 WL 1262023, at *7.

4   Further, if the Court were to employ a burden-shifting analysis, the Court would similarly find

5   Plaintiff's allegations sufficient.  See Acosta v. Perez, No. 119CV01224AWIEPG, 2021 WL

6   3910543, at *8 (E.D. Cal. Sept. 1, 2021) (noting Lopez standard for summary judgment, and

7   finding Defendants failed to meet burden of presenting defense), report and recommendation

8   adopted, No. 119CV01224AWIEPG, 2021 WL 4461536 (E.D. Cal. Sept. 29, 2021); Johnson v.

9   Garlic Farm Truck Ctr. LLC, No. 20-CV-03871-BLF, 2021 WL 2457154, at *6 (N.D. Cal. June

10  16, 2021) ("Applying this burden-shifting framework here, Mr. Johnson has met his initial

11  burden to plausibly show that removal of the identified barriers in the parking lot, entrance door,

12  and access ramp are readily achievable. Mr. Johnson alleges that the identified barriers are

13  "easily removed without much difficulty or expense" and that they are "the types of barriers

14  identified by the Department of Justice as presumably readily achievable to [be] remove[d]."

15  Compl. ¶ 20. Additionally, the Complaint alleges that "there are numerous alternative

16  accommodations" to provide people with disabilities a greater level of access even if Defendants

17  could not achieve complete removal of the barriers. Id. Those factual allegations are accepted as

18  true on default judgment."); but see Bouyer v. Ban Pan Corp., No. CV2011540MWFPDX, 2021

19  WL 2791623, at *3 (C.D. Cal. Apr. 5, 2021) ("Plaintiff's conclusory allegations 'fail to address

20  or otherwise show how the costs of removal do not exceed the benefits under the particular

21  circumstances.' ") (quoting Bouyer v. Shaina Prop., LLC, No. CV 20-3930-FMO (PLAx), 2020

22  WL 7775618, at *2 (C.D. Cal. Nov. 2, 2020)).

23      Accordingly, for purposes of default judgment, the Court accepts Plaintiff's allegations as

24  true and finds Plaintiff has plausibly alleged that removal of the architectural barriers he

25  encountered is readily achievable.  Whitaker v. Sheikh, 2022 WL 1262023, at *6–7 ("Although

26  plaintiff does not cite the regulation to which he refers in either the complaint or the motion for

27  default judgment, the court understands this as a reference to 28 C.F.R. § 36.304(b) . . . The

28  Ninth Circuit recognizes this regulation as listing examples of barrier removals that are 'likely to

1  be readily achievable[,]'. . . [w]hile § 36.304 does not necessarily establish a presumption that

2  such forms of barrier removal are readily achievable, it does make their

3  removal <u>plausibly</u> readily achievable . . [t]herefore, despite the conclusory nature of plaintiff's

4  allegations, the undersigned finds them sufficient to plausibly plead that it would be readily

5  achievable to lower a portion of the sales counter or add an adjacent lower counter.").[3]

6  **b.  California State Law Claims**

7  Plaintiff also brings a state law claim for violation of the California's Unruh Civil Rights

8  Act.  (FAC ¶¶ 34-41.)  The Unruh Act provides that "[a]ll persons within the jurisdiction of this

9  state are free and equal, and no matter what their . . . disability . . . are entitled to the full and equal

10  accommodations, advantages, facilities, privileges, or services in all business establishments of

11  every kind whatsoever."  Cal. Civ. Code § 51(a).  Unlike the ADA, the Unruh Act permits the

12  recovery of monetary damages, in the form of actual and treble damages, at a statutory minimum

13

---

14  [3]  The  Court notes however, there is authority supportive of finding the allegations insufficiently pled.  In <u>Bouyer v.

15  Ban Pan</u>, the court found default judgment inappropriate for lack of subject matter jurisdiction, and that the
   complaint failed to state a claim for relief under the ADA because it "primarily recite[s] legal conclusions," and
   contained "no facts indicating whether the removal of the alleged barriers" was readily achievable.  <u>Bouyer</u>, 2021

16  WL 2791623, at *3 (quoting <u>Whitaker v. Tesla Motors, Inc.</u>, 985 F.3d 1173, 1177 (9th Cir. 2021).  Specifically, the
   court found the allegations failed to address or show how the costs of removal did not exceed the benefits under the

17  particular circumstances, where the complaint contained the following generic allegation: "[t]he violations identified
   above are easily removed without much difficulty or expense. They are the types of barriers identified by the

18  Department of Justice as presumably readily achievable to remove and, in fact, these barriers are readily achievable
   to remove. Moreover, Plaintiff is informed and believes there are numerous alternative accommodations that could

19  be made to provide a greater level of access if complete removal were not achievable."  <u>Bouyer</u>, 2021 WL 2791623,
   at *3 (quoting complaint at ¶ 26); <u>see also</u> <u>Whitaker v. Prime Oil Mgmt., L.L.C.</u>, No. CV2010649MWFJEMX, 2021

20  WL 4353246, at *3 (C.D. Cal. Apr. 8, 2021) (same); <u>Bouyer</u>, 2020 WL 7775618, at *2 (same).
        In <u>Bouyer v. Shaina Prop.</u>, the court denied the application for default judgment, and did not require

21  plaintiff to file an amended complaint, but rather required any renewed application to "present sufficient evidence to
   meet his initial burden of plausibly showing that the requested accommodation is reasonable," under <u>Lopez</u>, in

22  addition to requiring the plaintiff to "establish he is entitled to rely on the 2010 ADAAG Standards as a basis for
   each specific ADA violation claimed."  2020 WL 7775618, at *2.  In <u>Whitaker</u>, the court required plaintiff to show

23  cause in writing why the claim for injunctive relief under the ADA should not be dismissed for lack of subject
   matter jurisdiction, denied the motion for default judgment without prejudice, and then if able to show standing,

24  required any renewed motion for default judgment to "provide evidence that (1) the barriers have not been removed
   since Plaintiff's visit in November 2020; (2) the cost of removing the barriers at issue does not exceed the benefits

25  under the circumstances; and (3) Plaintiff is entitled to rely on the 2010 ADAAG Standards as a basis for each
   specific ADA violation claimed."  <u>Whitaker</u>, 2021 WL 4353246, at *5.
        Given the Court's adoption of the discussion in <u>Whitaker v. Sheikh</u> and distinguishing of <u>Lopez</u> in the

26  context of a motion for default judgment, the Court finds it inappropriate to require the Plaintiff to provide evidence
   to meet a burden of production at the motion for default judgment stage. Additionally, under <u>Lopez</u> and <u>Whitaker v.</u>

27  <u>Sheikh</u>, the Court finds Plaintiff has plausibly alleged removal of the barriers is readily achievable.  <u>See Whitaker v.</u>
   <u>Sheikh</u>, 2022 WL 1262023, at *7 ("All the plaintiff must do at the pleadings stage to proceed under §

28  12182(b)(2)(A)(iv) is plausibly allege that the barrier's removal is readily achievable.").

1  of at least $4,000.00 per violation.  Cal. Civ. Code § 52(a); Molski v. M.J. Cable, Inc., 481 F.3d at

2  731; Vogel, 992 F. Supp. 2d at 1011.  After passage of the ADA in 1990, the Unruh Civil Rights

3  Act was amended to provide that a violation of the ADA constitutes a violation of the Unruh Civil

4  Rights Act.  Pickern v. Best W. Timber Cove Lodge Marina Resort, 194 F. Supp. 2d 1128, 1131

5  (E.D. Cal. 2002); Cal. Civ. Code § 54.1(d) ("A violation of the right of an individual under the

6  Americans with Disabilities Act of 1990 . . . also constitutes a violation of this section.").

7        As Plaintiff has stated a cause of action entitling him to relief under the ADA, Plaintiff has

8  also stated a claim entitling him to relief under the Unruh Act.  See Vogel, 992 F. Supp. 2d at

9  1011-12; Villegas v. Beverly Corner, LLC, No. 216CV07651CASSSX, 2017 WL 3605345, at *5

10 (C.D. Cal. Aug. 18, 2017); Johnson v. Singh, No. 2:10-CV-2547 KJM JFM, 2011 WL 2709365, at

11 *1–4 (E.D. Cal. July 11, 2011).  For all of the above stated reasons, the Court finds the second and

12 third Eitel factors weigh in favor of granting default judgment in favor of Plaintiff on the ADA

13 claim and the Unruh Civil Rights Act claim.

14        3.    The Sum of Money at Stake in the Action

15        The sum of money at stake in this action also weighs in favor of granting default

16 judgment.  Default judgment is disfavored where large amounts of money are involved, or the

17 award would be unreasonable in light of the defendant's actions.  G & G Closed Circuit Events,

18 LLC v. Nguyen, No. 3:11-cv-06340-JW, 2012 WL 2339699, at *2 (N.D. Cal. May 30, 2012);

19 PepsiCo, Inc. v. California Sec. Cans, 238 F. Supp. 2d 1172, 1176 (C.D. Cal. 2002) ("Under the

20 third Eitel factor, the court must consider the amount of money at stake in relation to the

21 seriousness of Defendant's conduct.").  In addition to injunctive relief, Plaintiff is seeking

22 statutory damages in the amount of $4,000.00, attorneys' fees and costs in the amount of

23 $4,334.33, for a total award of $8,334.33.  This is not an excessive amount of money, nor does it

24 seem unreasonable in light of the allegations contained in the complaint.  See Vogel, 992 F.

25 Supp. 2d at 1012 (citing Moore v. Cisneros, No. 1:12–cv–00188 LJO SKO, 2012 WL 6523017,

26 *4 (E.D. Cal. Dec. 13, 2012) (noting an award of $10,119.70 on default judgment in ADA

27 discrimination case was "not a relatively large sum of money, nor d[id] it appear

28 unreasonable")); Johnson v. Huynh, No. CIV S–08–1189 JAM DAD, 2009 WL 2777021, *2

1    (E.D. Cal. Aug. 27, 2009) (holding injunctive relief and an award of $12,000.00 for ADA

2    violations on default judgment was "relatively small award of damages").

3            Further, the Court recommends the attorneys' fees should be reduced, as discussed

4    below.  For these reasons, the Court finds this <u>Eitel</u> factor weighs in favor of granting default

5    judgment in favor of Plaintiff against Defendants.

6            4.      The Possibility of a Dispute Concerning Material Facts

7            The next <u>Eitel</u> factor considers the possibility of dispute concerning material facts.  As

8    discussed above, Plaintiff has sufficiently alleged disability discrimination under the ADA and the

9    Unruh Act by demonstrating his encountering of architectural barriers at the Facility.  The Court

10   finds this factor weighs in favor of entering default judgment as there is no possibility of dispute

11   regarding the material facts due to the factual allegations in the complaint being taken as true upon

12   Defendant's default.  <u>See</u> <u>Garamendi</u>, 683 F.3d at 1080; <u>PepsiCo, Inc. v. California Sec. Cans</u>, 238

13   F. Supp. 2d 1172, 1177 (C.D. Cal. 2002) ("Upon entry of default, all well-pleaded facts in the

14   complaint are taken as true, except those relating to damages.").

15           Accordingly, the Court finds this <u>Eitel</u> factor weighs in favor of granting default judgment

16   in favor of Plaintiff against Defendant.

17           5.      Whether the Default Was Due to Excusable Neglect

18           Defendants have failed to file a responsive pleading or otherwise appear in the action.  In

19   addition to the summons and complaint, Plaintiffs also served the requests for entry of default as

20   well as the motion for default judgment on Defendants.  (ECF Nos. 21-2 at 1-2, 26-7 at 1-2.)[4]

21   Defendants did not file any opposition to the motion for default judgment and did not make an

22   appearance at the hearing on the motion for default judgment.  Given these facts, there is no

23   indication or evidence that the failure to respond was due to excusable neglect.  <u>See</u> <u>Shanghai</u>

24   _____

25   [4]  As noted above, the agent for service of process for Defendant Taco Riendo was changed with the California
     Secretary of State on March 10, 2022.  Therefore, while the request for entry of default was served by mail on the

26   then registered agent for service of process, the agent had changed by the date the motion for default judgment was
     filed.  Nonetheless, Counsel Moore declares she was contacted on or about March 4, 2022, by Francisca Quirarte,

27   who was then identified as the Chief Financial Officer for Taco Riendo with the California Secretary of State, and
     who indicated she was in receipt of the documents served on the agent, who Ms. Quirarte stated was the accountant

28   for Taco Riendo.  (Moore Decl. ¶ 19.)  The Court finds the totality of the facts support a finding of proper service
     and notice to Defendants.

1   <u>Automation Instrument Co. v. Kuei</u>, 194 F. Supp. 2d 995, 1005 (N.D. Cal. 2001) ("The default of

2   defendant . . . cannot be attributed to excusable neglect.  All were properly served with the

3   Complaint, the notice of entry of default, as well as the papers in support of the instant motion.").

4          Accordingly, the Court finds this <u>Eitel</u> factor weighs in favor of granting default judgment

5   in favor of Plaintiff against Defendant.

6          6.    <u>The Strong Policy Underlying the Federal Rules of Civil Procedure Favoring</u>
            <u>Decisions on the Merits</u>
7

8          Default judgments are disfavored because "[c]ases should be decided on their merits

9   whenever reasonably possible."  <u>Eitel</u>, 782 F.2d at 1472.  However, the policy favoring decisions

10  on the merits does not weigh against entering default judgment where, as here, the Defendants'

11  failure to appear has made a decision on the merits impossible at this juncture.  Given the

12  prejudice to Plaintiff if default judgment is not granted as discussed above, and the merits of the

13  allegations contained in complaint, granting default judgment in this case would not violate the

14  general policy under the Federal Rules of Civil Procedure favoring decisions on the merits.  <u>See</u>

15  <u>PepsiCo</u>, 238 F. Supp. 2d at 1177 ("Defendant's failure to answer Plaintiffs' Complaint makes a

16  decision on the merits impractical, if not impossible.  Under Fed. R. Civ. P. 55(a), termination of

17  a case before hearing the merits is allowed whenever a defendant fails to defend an action.").

18         Accordingly, the Court finds the policy favoring decisions on the merit does not preclude

19  entering default judgment against Defendants under these circumstances.

20         7.    <u>The Eitel Factors Weigh in Favor of Granting Default Judgment</u>

21         Based on the foregoing, the Court finds that the <u>Eitel</u> factors weigh in favor of granting

22  default judgment and recommends that Plaintiff's motion for default judgment be granted.  The

23  Court now turns to the types of relief requested by Plaintiff.

24      **C.    Relief Requested**

25         In addition to injunctive relief, Plaintiff is seeking statutory damages in the amount of

26  $4,000.00, attorneys' fees in the amount of $3,354.50, and costs of $979.83, for a total award of

27  $8,334.33.  (Mem. 12.)  The Court recommends reducing the award of attorneys' fees for the

28  reasons discussed below.

1          1.      Injunctive Relief

2          Plaintiff seeks an injunction compelling Defendants to comply with the ADA by removing

3   the itemized barriers that he personally encountered.  (FAC at p. 9; Mem. 10; ECF No. 26 at 2.)

4   The ADA provides that "injunctive relief shall include an order to alter facilities to make such

5   facilities readily accessible to and usable by individuals with disabilities to the extent required" by

6   the ADA.  42 U.S.C. § 12188(a)(2).  A court may grant injunctive relief for violations of the Unruh

7   Act under § 52.1(h).  Vogel, 992 F. Supp. 2d at 1015; Cal. Civ. Code § 52.1 ("An action brought

8   pursuant to this section is independent of any other action, remedy, or procedure that may be

9   available to an aggrieved individual under any other provision of law.").  "Injunctive relief may be

10  granted 'when architectural barriers at defendant's establishment violate the ADA.' " Johnson v.

11  Pizano, No. 2:17-CV-1655 TLN DB, 2019 WL 2499188, at *6 (E.D. Cal. June 17, 2019) (quoting

12  Vogel, 992 F.Supp.2d at 1015).

13         Pursuant to federal and California law, Plaintiff is entitled to the removal of those

14  architectural barriers which he encountered on his visit to the Facility that violated the ADA.

15  Therefore, an injunction should issue requiring Defendants to remove barriers that are in violation

16  of the ADA and the ADAAG.

17         2.      Statutory Damages

18         Plaintiff seeks statutory damages in the amount of $4,000.00 as authorized by the

19  California Unruh Civil Rights Act.  The Unruh Act provides for minimum statutory damages of

20  $4,000.00 for each violation.  Cal. Civ. Code § 52(a).  Under the Unruh Act, statutory damages

21  may be recovered if a violation of one or more construction related accessibility standards denied

22  the plaintiff full and equal access to the place of public accommodation on a particular occasion.

23  Cal. Civ. Code § 55.56(a).  A plaintiff is denied full and equal access only when they personally

24  encountered the violation on a specific occasion.  Cal. Civ. Code § 55.56(b).  A litigant need not

25  prove any actual damages to recover statutory damages of $4,000.00.  Molski, 481 F.3d at 731.

26         As discussed above, Plaintiff sufficiently alleged violation of the ADA which established a

27  violation of the Unruh Act, and thus the Court finds that Plaintiff is entitled to statutory damages in

28  the amount of $4,000.00.

1        3.    <u>Attorneys' Fees and Costs</u>

2        Plaintiff is requesting attorneys' fees in the amount of $3,354.50, and costs of $979.83, for

3 a total award of $4,334.33 in fees and costs. (Mem. 12; Moore Decl. ¶¶ 3-14, ECF No. 26-2; Ex.

4 A, ECF No. 26-3 at 1-6; Ex. B, ECF No. 26-3 at 7-10; Ex. C, ECF No. 26-3 at 11-12; Ex. D, ECF

5 No. 26-3 at 13-14.)  Pursuant to 42 U.S.C. § 12205, the party that prevails on a claim brought

6 under the ADA may recover "a reasonable attorney's fee, including litigation expenses," at the

7 discretion of the Court.  "[U]nder federal fee shifting statutes the lodestar approach is the guiding

8 light in determining a reasonable fee." <u>Antoninetti v. Chipotle Mexican Grill, Inc.</u>, 643 F.3d 1165,

9 1176 (9th Cir. 2010) (internal punctuation and citations omitted).  The Ninth Circuit has explained

10 the lodestar approach as follows:

11        The lodestar/multiplier approach has two parts.  First a court determines the lodestar
12        amount by multiplying the number of hours reasonably expended on the litigation by
       a reasonable hourly rate.  The party seeking an award of fees must submit evidence
13        supporting the hours worked and the rates claimed.  A district court should exclude
       from the lodestar amount hours that are not reasonably expended because they are
14        excessive, redundant, or otherwise unnecessary.  Second, a court may adjust the
       lodestar upward or downward using a multiplier based on factors not subsumed in the
15        initial calculation of the lodestar. The lodestar amount is presumptively the
       reasonable fee amount, and thus a multiplier may be used to adjust the lodestar
16        amount upward or downward only in rare and exceptional cases, supported by both
       specific evidence on the record and detailed findings by the lower courts that the
17        lodestar amount is unreasonably low or unreasonably high.

18 <u>Van Gerwin v. Guarantee Mut. Life Co.</u>, 214 F.3d 1041,1045 (9th Cir. 2000) (internal citations

19 and punctuation omitted).

20        Under the lodestar method, the court will first determine the appropriate hourly rate for the

21 work performed, and that amount is then multiplied by the number of hours properly expended in

22 performing the work.  <u>Antoninetti</u>, 643 F.3d at 1176.  The district court has the discretion to make

23 adjustments to the number of hours claimed or to the lodestar, but is required to provide a clear but

24 concise reason for the fee award.  <u>Gates v. Deukmejian</u>, 987 F.2d 1392, 1398 (9th Cir. 1992).  The

25 lodestar amount is to be determined based upon the prevailing market rate in the relevant

26 community.  <u>Blum v. Stenson</u>, 465 U.S. 886, 896 (1984).

27        **a.**    **Reasonable hourly rate**

28        Counsel Tanya E. Moore ("Moore"), has been in practice for over twenty years, with over

ten years spent almost exclusively in disability access litigation, and her current billing rate is $650.00. (Moore Decl. ¶¶ 3-6.) However, Moore is only seeking an hourly rate of $300.00 for her work on this matter, and is seeking an hourly rate of $115.00 for the work of paralegals Whitney Law ("Law") and Isaac Medrano ("Medrano"), despite normally billing at a higher rate in the Northern District of California, where the firm is located. (Id. at ¶¶ 6-11.)

The lodestar amount is to be determined based upon the prevailing market rate in the relevant community, Blum, 465 U.S. at 896 (1984), which in this matter is the Fresno Division of the Eastern District of California. "To inform and assist the court in the exercise of its discretion, the burden is on the fee applicant to produce satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." Blum, 465 U.S. at 895 n.11.

This Court has previously found $300.00 per hour to be a reasonable rate for Moore. Trujillo v. Lakhani, No. 117CV00056LJOSAB, 2017 WL 1831942, at *8 (E.D. Cal. May 8, 2017); Trujillo v. Harsarb, 2021 WL 3783388, at *6-7. Further, in the context of cases alleging violations of the ADA, courts in this district have awarded fees ranging from $250.00 to $325.00 per hour within recent years. See Cervantes v. Vargas, No. 117CV00923LJOSKO, 2018 WL 2455615, at *7 (E.D. Cal. June 1, 2018) (awarding $275.00 per hour to attorney with nine years of experience and representation in 275 ADA actions); Block v. Christian, No. 1:16–cv–00650–LJO–SKO, 2017 WL 5248402, at *4 (E.D. Cal. Nov. 13, 2017) (finding $325.00 per hour to be a reasonable hourly rate for an attorney with twenty-four years of experience in general litigation and twelve years working on ADA cases); Block v. Starbucks Corp., No. 115CV00991DADCKD, 2018 WL 4352906, at *7 (E.D. Cal. Sept. 11, 2018) (same). Accordingly, the Court recommends that Plaintiff receive the requested $300.00 per hour for the services of Moore.

The Court also recommends that Plaintiff receive the requested $115.00 per hour for the services of the paralegals, as the Court has previously found the rate to be reasonable. Trujillo, 2017 WL 1831942, at *8; Trujillo v. Harsarb, 2021 WL 3783388, at *6-7; see also Durham v. FCA US LLC, No. 2:17-CV-00596-JLT, 2020 WL 243115, at *9 (E.D. Cal. Jan. 16, 2020)

1  ("Generally, paralegal rates within the Fresno Division of the Eastern District range between $75

2  to approximately $150.00."); Tarango v. City of Bakersfield, No. 1:16-CV-0099-JLT, 2017 WL

3  5564917, at *8 (E.D. Cal. Nov. 20, 2017) (same); AT&T Mobility LLC v. Yeager, No. 2:13-CV-

4  00007 KJM DB, 2018 WL 1567819, at *5 (E.D. Cal. Mar. 30, 2018) (reducing rate to $100 per

5  hour, finding it to be "the reasonable hourly rate for paralegals in this division.").

6       **b.**    **Reasonable number of hours**

7       Counsel Moore billed 8.0 hours in this action.  (Moore Decl. ¶ 9.)  Paralegal Medrano

8  billed a total of 4.9 hours.  (Decl. Paralegal Isaac Medrano ("Medrano Decl.") ¶ 4, ECF No. 26-5

9  at 1-2.)  Paralegal Law ("Paralegal Law") billed a total of 3.5 hours.  (Decl. Paralegal Whitney

10  Law ("Law Decl") ¶ 4, ECF No. 26-4 at 1-2.)

11       First, the Court preliminarily notes that the motion for default judgment nor any of the

12  declarations regarding the time expended in this matter delineate for work pertaining to now

13  dismissed former Defendant Anderson, and Plaintiff provides no explanation as to why billing

14  entries related to Anderson, in whole or part, would be reasonably imposed on the current

15  defaulted Defendants.  Second, the Court has previously noted that "[b]ased upon the Court's

16  familiarity with the actions filed by Ms. Moore's firm in this court, the Court is aware that [Moore

17  uses a] form complaint [that] is substantially similar to dozens of other actions filed in this

18  district," and previously found "time billed [to be] excessive and duplicative and .5 hours would be

19  a reasonable amount of time for Ms. Moore to spend on preparing, researching, reviewing, and

20  drafting the complaint."  Trujillo, 2017 WL 1831942, at *7.  Indeed here, the paragraphs of the

21  complaint contain essentially identical information aside from the complaint's specific allegations

22  regarding the barriers in one paragraph of the complaint.  (See FAC ¶ 10; case no. 1:21-cv-00342-

23  JLT-SAB, ECF No. 1.)  Additionally, the motion for default judgment and the declaration attached

24  are similarly essentially identical to previous motions for default judgment.  (See case no. 1:21-cv-

25  00342-JLT-SAB, ECF No. 12.)

26       Turning to the specific time entries here, between August 5, 2021, and September 30, 2021,

27  Moore expended 3.3 hours communicating with the client, with the private investigator, and

28  performing other investigation and review in relation to the drafting and filing of the complaint.

(Ex. A, ECF No. 26-3 at 2-3.)  The Court finds 3.3 hours in relation to the initiation and filing of the complaint to be excessive, given the almost entirely routine nature of the complaint aside from paragraph 10, and shall reduce the total hours by 2.8, as 0.5 hours total for these tasks is reasonable.  See Trujillo, 2017 WL 1831942, at *7.  The Court acknowledges that here, Moore has reduced the amount of billable hours here by hiring a private investigator to complete an additional site visit, rather than visiting the site herself, which has significantly added to the billable hours in past cases without a discernible benefit.  See Trujillo v. Harsarb, 2021 WL 3783388, at *6-7.  The Court grants the award of these costs as discussed below.

On September 27, 2021, Law expended 0.7 hours in pre-complaint filing research to identify defendants and review other information related to the site, and revising the complaint. The Court finds a reduction of 0.4 hours to be reasonable given Anderson was dismissed, and the similar tasks completed by Moore on related tasks.

On December 7, 2021, Law billed 0.4 hours reviewing proofs of service and preparing a motion for default judgment, though a motion for default judgment was not filed until after the first amended complaint was filed, and additionally, this time entry appears before any defaults were entered, as defaults were not entered against Taco Riendo and Anderson until December 13, 2021. (ECF Nos. 8, 9.)  These tasks are also duplicative of the review of the proofs of service completed by Medrano on December 13, 2021.  Accordingly, the Court shall reduce the entry by 0.4 hours.

On December 8, 2021, Counsel Moore expended 0.4 hours revising a draft request for entry of default against Taco Riendo and Anderson.  The Court notes the actual filing was not signed until December 13, 2021, and the signature line states Moore is counsel for Plaintiff "Hendrik Block," a person who is not a party in this action, demonstrating the routine nature of these serial filings that simply fill in the blanks for different plaintiffs and defendants.  (See ECF No. 8 at 2.) Further, the first amended complaint was thereafter filed on December 20, 2021, and another request for entry of default was later drafted and entered against Taco Riendo.  Accordingly, the Court reduces this entry by 0.4 hours.

On December 13, 2021, Paralegal Medrano billed 0.2 hours drafting and reviewing the proofs of service as to Taco Riendo of the initial complaint.  On December 13, 2021, Paralegal

1   Medrano billed 0.3 hours related to saving invoices, drafting and reviewing proofs of service for

2   now-dismissed Anderson.  The Court finds reduction of 0.3 hours appropriate as to Anderson.

3         On December 16, 2021, Moore billed 0.5 hours speaking with opposing counsel, and noted

4   memo re further research needed.  There is no discussion in the moving papers as to the

5   reasonableness of this entry, however, it appears related to Anderson being an incorrectly named

6   Defendant as thereafter, on December 17, 2021, Law billed 0.4 hours researching Anderson,

7   Moore then expended 0.3 hours researching the correct landlord as related to amending the

8   complaint, Law then billed .2 hours drafting the first amended complaint, and Moore then billed

9   .30 hours revising the first amended complaint and in relation to dismissing Anderson as a

10  defendant.  Further, on January 3, 2022, Moore billed an additional 0.1 hours conversing with

11  opposing counsel regarding the dismissal of Anderson.  It is not clear whether opposing counsel

12  only refers to counsel for the now dismissed Anderson.  As these entries appear almost entirely

13  related to the now dismissed Anderson, the Court finds a reduction appropriate, though not entirely

14  as determining the correct defendant may be reasonable.  The Court reduces Moore's entries by

15  0.6, and reduces Laws' entry by 0.4 hours.

16        On December 17, 2021, Medrano billed 0.4 hours drafting a request for default and

17  declaration for such.  It appears this may have been mistakenly entered on the wrong date and may

18  correspond to the entries of default entered on the docket on December 13, 2021.  The Court finds

19  it appropriate to reduce the hours by 0.4 hours both because of the inconsistent and seemingly

20  inaccurate reporting of the billing entry, and because this work is duplicative as Medrano bills for

21  time expended entering default against all Defendants, including Taco Riendo, again on February

22  18, 2022.  For the same reason, the Court reduces 0.2 hours billed by Paralegal Medrano on

23  December 22, 2021, for drafting certificates of service for default.

24        The Court finds reduction of the 0.3 hours expended by Counsel Moore on December 23,

25  2022, in preparing the dismissal of Anderson to be appropriate, as again, there is no explanation as

26  to why any of the time entries as to now dismissed Anderson should be levied upon the current

27  Defendants.

28        On January 3, 2022, Medrano billed 0.1 hours for drafting a letter after default was entered

on Anderson, however, default was entered as to Anderson on December 13, 2021 (ECF No. 9), and Anderson was dismissed on January 5, 2022.  Further, on the same date, Medrano bills 0.2 hours for drafting a letter after default for Taco Riendo, however, this is duplicative of the letter of default drafted on March 1, 2022.  The first amended complaint was filed on December 20, 2021, so again, it is not clear if these billing entries were simply entered on the incorrect date.  The Court reduces 0.3 hours for these January 3, 2022 entries by Medrano.

Medrano then bills 0.20 hours on January 6, 2022, for drafting the notice of voluntary dismissal of Anderson, and then there is essentially a duplicate entry on January 11, 2022, for 0.2 hours drafting a notice of voluntary dismissal for Anderson.  (ECF No. 26-3 at 4.)  This is despite the fact that Moore billed for the request for dismissal of Anderson on December 23, 2021, with instructions to Medrano, and despite the fact that notice of dismissal of Anderson was filed on January 3, 2022.  (ECF No. 14.)  The Court shall reduce the 0.2 hours billed on January 6, 2022, and the 0.2 hours billed on January 11, 2022, as duplicative and not supported by the record given the timeline of the docket.

On February 18, 2022, Medrano billed 0.6 hours drafting the requests for entry of default against the three Defendants, and Moore billed 0.5 hours preparing the requests for entry of default.  Given the routine nature of these filings, the Court finds reduction of 0.3 hours for Medrano, and 0.3 hours for Moore to be appropriate.  The Court accepts the 0.1 hours billed by Law reviewing the entered defaults on March 1, 2022.

On March 1, 2022, Medrano billed 0.4 hours drafting letters to the three current Defendants after default.  The Court will reduce these entries by 0.3 as the entry for Olga is inconsistently billed in a greater increment for the same task, and The Court finds these to be clerical tasks, or duplicative because of the multiple Defendants.  See Missouri v. Jenkins by Agyei, 491 U.S. 274, 288 n.10 (1989) ("purely clerical or secretarial tasks should not be billed at a paralegal rate, regardless of who performs them.").

Medrano billed 1.8 hours drafting portions of the motion for default judgment.  (ECF No. 26-3 at 5.)  Law expended 1.7 hours on the motion for default judgment.  (Id.)  Counsel Moore billed 1.4 hours on the motion for default judgment.  The Court finds 1.5 hours of total paralegal

time and .5 hours of Counsel Moore's time to be reasonable for drafting the motion for default judgment and associated materials. Accordingly, the Court reduces Moore's time by 0.9, Law's time by 1.0 hour, and Medrano's time by 1.0 hour.

Accordingly, totaling the above reductions, the Court finds that a reduction of 5.3 hours is appropriate for Moore, a reduction of 3.2 hours for Medrano is appropriate, and a reduction of 2.2 hours for Law is appropriate.

The Court shall add 0.1 hours for the time Moore expended attending the hearing via videoconference, which lasted less than five (5) minutes.

Accordingly, the Court finds that paralegal Whitney Law reasonably expended 1.3 hours on this litigation; that paralegal Isaac Medrano reasonably expended 1.7 hours in this litigation; and counsel Tanya Moore reasonably expended 2.8 hours in this litigation.

### c.   Reasonable Attorneys' Fee Award

The Court finds that: (1) counsel Moore reasonably expended 2.8 hours in this action at a reasonable rate of $300.00 per hour, for a total of $840.00; (2) paralegal Whitney Law reasonably expended 1.3 hours in this action at a reasonable rate of $115.00 per hour, for a total of $149.50; and paralegal Isaac Medrano reasonable expended 1.7 hours in this litigation at a reasonable rate of $115.00 per hour, for a total of $195.50.

Accordingly, the Court recommends that Plaintiff be awarded attorneys' fees in the amount of $1,185.00, reduced from the requested amount of $3,354.50.

### d.   Costs

Both the ADA and Unruh Act authorize the award of costs for an action. <u>See</u> 42 U.S.C. § 12205; Cal. Civ. Code § 52(a). Plaintiff seeks costs of $402.00 for filing fees, $382.90 for service expenses, and $194.93 for a consultant that completed investigation prior to filing of the complaint. (Moore Decl. ¶¶ 12-13; Ex. B, ECF No. 26-3 at 7-10; Ex. C, ECF No. 26-3 at 11-12; Ex. D, ECF No. 26-3 at 13-14.) The Court finds these expenses to be reasonable and recommends awarding Plaintiff a total of $979.83 in costs.

/ / /

/ / /

**V.**

**RECOMMENDATION AND ORDER**

The <u>Eitel</u> factors weigh in favor of granting default judgment, and the entry of default judgment is within the discretion of the Court.  See <u>Aldabe v. Aldabe</u>, 616 F.2d 1089, 1092 (9th Cir. 1980).

Based upon the foregoing, the Court HEREBY RECOMMENDS that:

1.      Plaintiff's motion for default judgment be GRANTED;

2.      Plaintiff be AWARDED statutory damages in the amount of $4,000.00;

3.      Plaintiff be AWARDED reduced attorneys' fees in the amount of $1,185.00;

4.      Plaintiff be AWARDED costs in the amount of $979.83; and

5.      Plaintiff be GRANTED an injunction requiring Defendants, within six (6) months of entry of the order, to provide disability access by making the following modifications to the property known as known as Taco Riendo, located at 235 West Inyo Avenue in Tulare, California ("the Facility"), such that each item is brought into compliance with the accessibility requirements of the Americans with Disabilities Act and California Code of Regulations, Title 24, by:

      i.   Providing a properly configured and identified van-accessible parking stall with adjacent access aisle;

      ii.  Providing a properly configured accessible route from the accessible parking stall(s) to the Facility entrance;

      iii. Providing a properly configured accessible Facility entrance, including properly adjusting and maintaining the door pressure and closing speed, providing proper level maneuvering clearances at the exterior landing, and providing a properly configured threshold;

      iv.  Providing a properly configured accessible table; and

      v.   Providing a properly configured accessible portion of the transaction counter.

This findings and recommendations is submitted to the district judge assigned to this action,

pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 304.  Within fourteen (14) days of service of this recommendation, any party may file written objections to this findings and recommendations with the Court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C).  The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal.  Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

Further, Plaintiff is HEREBY ORDERED to serve a copy of this findings and recommendations on Defendants within three (3) days of entry.[5]

IT IS SO ORDERED.

Dated:   **June 22, 2022**

UNITED STATES MAGISTRATE JUDGE

---

[5]  Plaintiff shall serve Taco Riendo on the agent for service of process that was updated on March 10, 2022: Jose Luis Martinez, 235 W Inyo Ave., Tulare, California 93274.